**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

_____

SOMPO AMERICA INSURANCE
COMPANY,

                 Plaintiff,

v.

                                     Case No. 20-10734

FCA US LLC and FCA ITALY S.P.A.,

                 Defendants.

and

FCA US LLC,

        Defendant/Third-Party Plaintiff,

v.

AISIN WORLD CORPORATION
OF AMERICA, and AW TECHNICAL
CENTER USA, INC.,

             Third-Party Defendants.

_____/

**OPINION AND ORDER GRANTING THIRD-PARTY DEFENDANTS' MOTION TO
DISMISS AND DENYING DEFENDANT FCA ITALY'S MOTION TO DISMISS FOR
LACK OF PERSONAL JURISDICTION**

**I. INTRODUCTION**

     Plaintiff Sompo American Insurance ("Sompo") brings the present subrogation

action after paying a claim to its insured Aisin World Corporation ("Aisin") and Aisin's

U.S. subsidiary AW Technical Center ("AWTC") for fire damage at AWTC's Michigan

vehicle testing facility. The fire occurred as AWTC employees conducted dynamometer

testing on a prototype 2018 Jeep Renegade SUV—manufactured in part by both FCA

US, LLC ("Chrysler") and FCA ITALY S.p.A. ("Fiat") (collectively "Defendants"). Chrysler

filed a Third-Party complaint against both Aisin and ATWC (collectively "Third-Party Defendants"), who now jointly seek dismissal of Chrysler's Third-Party claim. Fiat has also filed a motion to dismiss for lack of personal jurisdiction.

First, the court finds that under the rules of subrogation, Chrysler's claims against the insured Third-Party Defendants must be brought as affirmative defenses in the original action. Therefore, Chrysler's third-party complaint will be dismissed.  Second, Fiat's motion to dismiss will be denied because the court finds Fiat's alleged role—partially manufacturing, shipping the Jeep to Michigan, and then transferring it to Chrysler for further testing—is sufficient to create specific personal jurisdiction.

## II. BACKGROUND

In January 2018, Fiat shipped a 2018 Jeep Renegade from Turin, Italy to Chrysler's Technology Center in Auburn Hills, Michigan. (ECF No. 24-5, PageID.231.) The Jeep was one of fifteen "test vehicles" built "at the time" and started as "a normal production" (presumably gas-powered) vehicle that was "partially assembled by the manufacturer [Fiat]" and then shipped to Chrysler its sister-company. (ECF No. 25-2, PageID.223-24; ECF No. 25-3, PageID.228.) Both Fiat and Chrysler are subsidiaries of Fiat-Chrysler Automobiles N.V. ("FCA") a publicly-traded company incorporated in the Netherlands.[1] (*Id.*; ECF No. 27-2, PageID.247.) Chrysler is a limited liability company formed in Delaware with its principal place of business in Michigan, while Fiat is incorporated in Italy with its headquarters in Turin, Italy. (ECF No. 25-3, PageID.227.)

---

[1] During the pendency of these motions, in January 2021, FCA merged with PSA Group creating a new parent company Stellantis NV. *See* Nora Naughton, *Fiat Chrysler, PSA Group Merge to Create New Auto-Making Behemoth*, Wall St. J., (Jan. 16, 2021) https://www.wsj.com/articles/fiat-chrysler-psa-group-merge-to-create-new-auto-making-behemoth-11610795486.

In Michigan, Chrysler worked with its suppliers LG Chem and GKN Driveline to add a plug-in hybrid drivetrain to the Jeep—this included a battery pack, electric drive system and "related equipment." (ECF No. 25-2, PageID.223.) Chrysler/Fiat's affidavits state that, before the modifications of the Jeep occurred, ownership was transferred from Fiat to Chrysler. (*Id.* at 224.)

In March 2018, the Jeep was loaned to Aisin, and it's Michigan based subsidiary ATWC, pursuant to "a series of agreements" between Chrysler and Aisin/ATWC, which required Chrysler to provide "vehicles containing Aisin transmissions as requested by Aisin for testing or other work." (ECF No. 9, PageID.31.) Chrysler argues that the provision of the Jeep at issue was governed by "Purchase Order 48720088."  which specified "Purchasing General Terms and Conditions." (*Id.)*  Chrysler argues this agreement contained an insurance indemnification clause signed by Aisin requiring it to "cause its insurers to waive, any right of subrogation" against Chrysler. (*Id.*) Furthermore, at the time of delivery, Chrysler alleges that "AWTC executed a Vehicle Usage Agreement governing its use of the vehicle" which Chrysler contends also requires AWTC to indemnify Chrysler against any loss related to the vehicle. (*Id.* at 32-33.) Sompo, however, argues that the subrogation waivers in the contracts do not apply to the fire that occurred. (ECF No. 17, PageID.72-73.)

On December 19, 2018, the Jeep at issue caught fire while being tested on a chassis dynamometer inside AWTC's Ann Arbor Township, Michigan facility. (ECF No. 1, PageID.4-5.) Plaintiff Sompo alleges in its complaint that a "[s]ubsequent investigation revealed that the fire began after heat from the subject vehicle's exhaust

system caused the contents of nearby hoses from the vehicle's HVAC system to ignite."
(*Id.* at 5.)

Sompo alleges that the fire caused in excess of $1,000,000 in damages to
AWTC's facility. (*Id.* at 7.) Sompo, who insured the property, paid a property damage
claim and now brings the present action to subrogate the claim and recover damages
from both Chrysler and Fiat. Sompo brings both negligence and "breach of bailment"
claims sounding in Michigan tort law. (*Id.* at 6-7.)

After filing an answer to Sompo's complaint, Chrysler filed a Third-Party
Complaint against Aisin and AWTC. (ECF No. 9., PageID.29.) The Third-Party
complaint alleges that Aisin and ATWC, as Third-Party Defendants, were negligent in
their operation of the dynamometer bay where the fire occurred and that they misused
the vehicle. (*Id.* at 38-39, 41-42.) Second, the complaint alleges a breach of contract
because Third-Party Defendants failed "to cause [the] Sompo policy on which the claim
is based to contain a waiver of Subrogation." (*Id.* at 36-37, 39.)

Third-Party Defendants and Plaintiff Sompo—who are all represented by the
same counsel—have now filed a joint motion to dismiss Chrysler's Third-Party
complaint. (ECF No. 17, PageID.56.)

Fiat has also filed a motion to dismiss. (*See* ECF No. 25.) The motion, which
includes attached affidavits, argues that Fiat, an Italian company with its principal place
of business in Turin, Italy, is not subject to either general or specific personal jurisdiction
in Michigan with regard to the Jeep Renegade test vehicle. The court will now consider
these two motions in turn.

4

### III. THIRD-PARTY DEFENDANT'S MOTION TO DISMISS

Sompo, Aisin and AWTC argue for dismissal of Chrysler's third-party complaint because they contend that the "ordinary principles" of subrogation require Sompo to "stand[] in the shoes" of its insured Aisin and AWTC. (ECF 17, PageID.65.) Since Sompo already stands in the place of its insured, Sompo reasons that Chrysler's claims should be brought against it as affirmative defenses instead of complicating the matter procedurally by impleading Aisin and AWTC as Third-Party Defendants. (*Id.*) In response, Chrysler argues that it should at least be allowed to pursue its breach of contract claims directly against the Third-Party Defendants because if Sompo is successful in its subrogation claim, it would mean "that Aisin and AWTC breached their contractual obligations to waive subrogation as to [Chrysler]." (ECF No. 20, PageID.173.)

After reviewing the factual record and applicable precedents, however, the court concludes that Sompo's motion to dismiss the third-party complaint should be granted.

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief may be granted. Under the Rule, the court construes the complaint in the light most favorable to plaintiff and accepts all well-pleaded factual allegations as true. *Barber v. Miller*, 809 F.3d 840, 843 (6th Cir. 2015).

Federal Rule of Civil Procedure 8 requires a plaintiff to present in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must provide sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that defendant acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*,

550 U.S. at 555).

"A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). "To state

a valid claim, a complaint must contain either direct or inferential allegations respecting

all the material elements to sustain recovery under some viable legal theory." *Boland v.*

*Holder*, 682 F.3d 531, 534 (6th Cir. 2012) (emphasis removed) (citing *League of United*

*Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)). Determining

whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."

*Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In reviewing a motion to dismiss, the court may consider "any exhibits attached

[to the complaint], public records, items appearing in the record of the case and exhibits

attached to defendant's motion to dismiss so long as they are referred to in the

Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d

426, 430 (6th Cir. 2008).

### B. Discussion

In Michigan, subrogation is defined as "'[t]he substitution of one person in the

place of another with reference to a lawful claim, demand or right, ... so that he who is

substituted succeeds to the rights of the other in relation to the debt or claim, and its

rights, remedies, or securities.'" *Yerkovich v. AAA*, 461 Mich. 732, 737–38, 610 N.W.2d

6

542, 544 (2000) (quoting Black's Law Dictionary (4th ed.)). "As a subrogee, one stands in the shoes of the subrogor and acquires no greater rights than those possessed by the subrogor." *Id.* (citing *Shermer v. Merrill*, 33 Mich. 284, 287 (1876)).

While both sides acknowledge these general principles, Michigan courts have never considered the corollary question at issue—can a defendant in a subrogation action assert claims directly against the subrogor or must it assert such claims as affirmative defenses against the subrogee? (*See* ECF No. 17, PageID.65; ECF No. 20, PageID.187-88.) Chrysler argues that "Aisin and AWTC's [contractual] duties are separate and distinct from any purported subrogation rights that Sompo claims in this case" and that Michigan law would allow them to proceed as separate claims. (ECF No. 20, PageID.182-83.)

Sompo, however, points to two other recent unpublished district court decisions from within the Sixth Circuit, applying the substantive law of Ohio and Kentucky respectively, where the court dismissed third-party claims against the subrogor. *See Cont'l Cas. Co. v. Equity Indus. Maple Heights, LLC*, No. 1:16 CV 453, 2017 WL 1317123 (N.D. Ohio Apr. 10, 2017); *Farmers Mut. Ins. Co. of Mason Cty. v. Stove Builder Int'l, Inc.*, 2019 WL 1301990 (E.D. Ky. Feb. 11, 2019), report and recommendation adopted, 2019 WL 1302354 (E.D. Ky. Mar. 21, 2019). Sompo also cites several cases from other jurisdictions that reach the same conclusion. *See, e.g., Dyvex Indus., Inc. v. Agilex Flavors & Fragrances, Inc.*, No. 12-CV-0979, 2015 WL 7889061, at \*4 (M.D. Pa. Dec. 4, 2015) (dismissing defendant's third-party claims against the insured); *Travelers Cas. & Sur. Co. v. Washington Tr. Bank*, No. CV-13-0409-JLQ, 2014 WL 4384031, at \*3 (E.D. Wash. Sept. 3, 2014) (same); *USAA Cas. Ins.*

*Co. v. Metro. Edison Co.*, No. 1:12-CV-1178, 2013 WL 2403309, at *2 (M.D. Pa. May 31, 2013) (same).

Chrysler responds by arguing that the case law relied on by Sompo and the Third-Party Defendants "is inapposite." (ECF No. 20; PageID.187.) Chrysler argues that the "non-binding" precedent cited by Sompo stems only from "tort-based claims for [fault] allocation and contribution" unlike the claims presently at issue which are "based on independent contractual breaches by Aisin and AWTC." (*Id.* at 188.) This attempt by Chrysler to distinguish the cited precedents is factually incorrect. In *Cont'l Cas. Co.*, for instance, an insurer sued a defendant landlord to offset payments it made to an insured warehouse tenant whose property was damaged by a fire in the facility. 2017 WL 1317123, at *1. The landlord attempted to implead the insured tenant as a third-party defendant "assert[ing] claims *for breach of contract*, contribution . . ., contractual and common law indemnification, and 'res ipsa loquitur' against [the insured.]" *Id.* (emphasis added). While the landlord argued as a general matter that "no Ohio court has held that claims against subrogors fail as a matter of law" it also argued that, at minimum, it should be allowed to bring its contractual claims directly against the tenant because the "insurer has no contractual obligations to [the landlord]." *Id.* at *3. But the court held that the third-party defendant tenant should be entirely dismissed from the action. *Id.* The court adopted the reasoning of another federal court which concluded that "'the presence of the subrogors in the case as third party defendants, would serve no legal purpose or be of any legal benefit to [the third-party plaintiff.]'" *Id.* (quoting *American Fire and Casualty Co. v. Material Handling Supply*, Inc., 2007 WL 1296200 at *2 (D.N.J. April 27, 2007). And the court expressly rejected the argument that contract claims

8

should be treated differently. *Id.* at *4 ("The Court finds that regardless of whether the claims sound in tort or contract, the same analysis applies. In other words, by way of contract claims, [the landlord] is attempting to offset or reduce its payment to [subrogee] by the damages allegedly caused by [third-party defendant]."). Although *Cont'l Cas. Co.* applied Ohio and not Michigan law, it is directly on point.

Chrysler fails to explain how Michigan's subrogation law is different from other jurisdictions like Ohio where, as a general matter, such third-party claims have been barred. An informal review by this court indicates that the principles of subrogation law in Michigan and Ohio are closely aligned. In fact, when defining subrogation, the Ohio Supreme Court cites the same Black's Law Dictionary definition of subrogation on which the Michigan Supreme Court relied in *Yerkovich*. *See Ohio Bur. of Workers' Comp. v. McKinley*, 956 N.E.2d 814, 820 (Ohio 2011) (defining subrogation as when "[a] subrogated insurer stands in the shoes of the insured-subrugor and has no greater rights than those of its insured-subrogor") (citing Black's Law Dictionary (9th Ed.2009); *see also Yerkovich,* 461 Mich. at 38, 610 N.W.2d at 544 (same). Therefore, the court concludes that if the Michigan Supreme Court were to consider the issue, it would most likely follow the majority rule and require that third-party claims be presented as affirmative defenses.

As a practical matter, the issue of liability for breach of contract in the present dispute appears to be a distinction without a difference. In the reply brief jointly filed by Third-Party Defendants and Sompo, Sompo concedes that no matter how the claim is cast Sompo will be liable for any damages incurred by Chrysler:

> If [Chrysler] is correct and Aisin and/or AWTC was required by the contract to waive Sompo's right of subrogation, then Sompo, as subrogee, has no right of

subrogation and its action must be dismissed. Similarly, if [Chrysler] is correct and Aisin and AWTC is required to indemnify [Chrysler], then Sompo, as subrogee, has no right of recovery and its action must be dismissed. *To the extent that any of [Chrysler]'s alleged damages sought against Aisin and AWTC arising from these alleged breaches of contract would not bar or could not be offset from Sompo's recovery, it would be covered under the policy and paid by Sompo.*

(ECF No. 21, PageID.192–93 (emphasis added).) In other words, Sompo concedes that

the nature of the policy is such that it assumes liability for all of Aisin/AWTC's conduct

*including* any potential damages from the Third-Party Defendants' breach of contract

involving the fire. Given this concession, the court sees no reason that Chrysler cannot

easily pursue its breach of contract claim through affirmative defenses in the original

action. Therefore, the court concludes that Chrysler's third-party complaint should be

dismissed in its entirety.

## IV. FIAT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Defendant Fiat moves to be dismissed for lack of personal jurisdiction in

Michigan. Fiat notes that it "is not registered to do business in Michigan, has no

directors, officers, or employees in Michigan, owns no real estate in Michigan, and does

not distribute [cars] to dealership or the general public in Michigan." (ECF No. 25,

PageID.215.) Fiat also observes that "[c]ritical components" like the plug-in hybrid

system were added to the subject test vehicle by Chrysler once they took ownership

and that it was Chrysler who loaned the car out for testing. (*Id.*) Fiat has submitted two

affidavits in support of its motion. (ECF No. 25-2; ECF No. 25-3.) The first is from a chief

engineer at Chrysler; the second is from FCA's general counsel.

In opposition, Sompo contends that the facts support specific personal

jurisdiction. (ECF No. 27-1, PageID.241.) Sompo argues that Fiat has "specific and

intentional ongoing business relationships" in Michigan through its sister-company

Chrysler and through its wholly-owned subsidiary VM North America, Inc. (*Id.* at 242.) And, it also points out that the affidavits produced by Fiat indicate that Fiat shipped fifteen Jeeps to Michigan for testing purposes and "was aware of their nature and general[]. . . purpose." (*Id.*)

Second, in the alternative, Sompo argues that "general jurisdiction may exist based upon [Fiat's] ongoing relationship with [VM North America]" under an "alter-ego theory of personal jurisdiction." (*Id.* at 243.) Sompo also argues it should be granted an opportunity to conduct further "jurisdictional discovery" to support this theory. (*Id.*)

### A. Standard of Review

After the filing of a complaint, a defendant may move to dismiss for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). "For specific jurisdiction to exist in a diversity case, two factors must be satisfied: the forum state long-arm statute, and constitutional due process." *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012).

The "constitutional touchstone" of due process is whether the defendant has purposefully established minimum contacts in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985). Constitutionally, "[p]ersonal jurisdiction may be either 'general' or 'specific.'" *Intera Corp. v. Henderson*, 428 F.3d 605, 615 (6th Cir. 2005) (citing *Bird v. Parson*, 289 F.3d 865, 873 (6th Cir. 2002)). General jurisdiction occurs where "a defendant's contacts with the forum state are of such continuous and systematic nature that the state may exercise personal jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the state." *Id.*; *see also Miller*, 694 F.3d at 679-80. Specific jurisdiction arises "where the claims in the case arise from or are related to the defendant's contacts with the forum state." *Intera Corp.*,

428 F.3d at 515 (citing *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997)).

The Sixth Circuit has established a three-prong test for determining specific jurisdiction:

> First, defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make exercise of jurisdiction over the defendant reasonable.

*Id.* (quoting *S. Mach. Co. v. Mahasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *Means v. U.S. Conference of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016).

Proving the first element, purposeful availment, is "the *sine quo non* for *in personam* jurisdiction." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *S. Mach. Co.*, 401 F.2d at 381-82). Purposeful availment asks "whether [the defendant] acted or caused a consequence in [the forum state] such that he invoked the benefits and protections of [the forum state's] law." *MAG IAS Holdings v. Schmuckle*, 854 F.3d 894, 900 (6th Cir. 2017). This requirement "ensures that [the defendant] could have reasonably 'anticipated being haled into court there' . . . and it ensures that [the defendant] is not brought into a . . . court 'solely as a result of random, fortuitous, or attenuated contacts." *Id.* (quoting *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1300 (6th Cir. 1989); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "[P]urposeful availment exists if the defendant created a 'substantial connection' with the forum state by engaging in 'significant activities within the State,' or by creating 'continuing obligations' to residents in that state." *Id.* (quoting *Burger King*, 471 at 475-76).

The plaintiff bears the burden of proving personal jurisdiction. *Intera Corp.*, 428 F.3d at 515. "When the district court rules on written submissions alone[,] the burden consists of a prima facie showing that personal jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (citations omitted). In doing so, "the pleadings and affidavits must be viewed in the light most favorable to the plaintiff, and the district court should not weigh the controlling assertions of the party seeking dismissal." *Air Prods. and Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 549 (6th Cir. 2007) (citations omitted).

### B. Discussion

After reviewing the pleadings and Fiat's affidavits, the court concludes that Sompo has presented a prima facie case for specific personal jurisdiction in Michigan. First, Michigan's long-arm statute appears to have been met. Michigan's long-arm statute, Mich. Comp. Laws § 600.715, provides limited personal jurisdiction over a nonresident corporation for claims "arising out of the act or acts which create any of the following relationships," including "[t]he transaction of any business within the state." "The Michigan Legislature's 'use of the word 'any' to define the amount of business that must be transacted establishes that even the slightest transaction is sufficient to bring a corporation within Michigan's long-arm jurisdiction.'" *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 504-05 (6th Cir. 2014) (quoting *Oberlies v. Searchmont Resort, Inc.*, 246 Mich. App. 424, 633 N.W.2d 408, 413 (2001)). Fiat acknowledges that it knowingly shipped the Jeep at issue to Michigan for testing purposes and then transferred ownership to Chrysler. Such a transfer is clearly sufficient to satisfy the long-arm statute "under the broad 'slightest transaction' test described above." *Beydoun*, 768

13

F.3d at 505.  Indeed, in its briefing, Fiat does not appear to directly contest this conclusion.

"Although Michigan's long-arm statute authorizes personal jurisdiction over [Fiat], a court in Michigan cannot exercise its personal jurisdiction in violation of [Fiat]'s constitutional right to due process." *Id.* (quoting *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 889 (6th Cir. 2002). Whether the Sixth Circuit's three-prong test for specific personal jurisdiction under the due process clause has been satisfied presents a closer question, specifically the question of purposeful availment. *See Intera Corp.,* 428 F.3d at 515. The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, . . . or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted).

The opposing briefs appear to be talking past each other. Fiat views the Jeep as a product "merely plac[ed] into stream of commerce" by an out-of-state corporation. (ECF No. 25, PageID.216.) And Fiat correctly notes that the Sixth Circuit has adopted a "stream of commerce 'plus' approach." (*Id.*) Whereby, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposely directed toward the forum State." *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 479–80 (6th Cir. 2003) (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102 (1987) (O'Connor, J.) (plurality op.)); *see also Parker v. Winwood*, 938 F.3d 833, 840-841 (6th Cir. 2019) ("For a defendant to purposely avail himself of the privilege of acting within a forum state, he must do more than merely place a product into the stream of commerce.").

In support of its view, Fiat cites *World-Wide Volkswagen Corp. v. Woodson* where the United States Supreme Court found that a car's New York-based retailer and distributor were not subject to personal jurisdiction after a car crash in Oklahoma because defendants did not sell cars in Oklahoma, solicit business there, or "indirectly, through others, serve or seek to serve the Oklahoma market." 444 U.S. 286, 295 (1980). (ECF No. 28, PageID.253.) In the opinion, the Court rejected the idea that "[e]very seller of chattel['s] . . . amenability to suit would travel with the chattel" simply because it was foreseeable that a product like a car would travel to the state. *Id.* at 296.

The plurality opinion in the Court's *Asahi Metal Indus, Co* decision provides examples of extra "plus" conduct that could create jurisdiction. 480 U.S. at 112 ("Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State.").

Sompo, in contrast, cites another line of Sixth Circuit precedent to argue that Fiat's "ongoing. . .  business relationships" in Michigan with its sister-company Chrysler and its subsidiary VM North America satisfy the purposeful availment requirement. (ECF No. 27-1, PageID.241 (citing *Mag IAS Holdings, Inc.*, 854 F.3d at 899-900)). In *Mag IAS Holdings, Inc.*, the Sixth Circuit held that plaintiffs had successfully made a prima facie showing of personal jurisdiction for a defendant, a German citizen residing in Germany, based on his substantial contacts with Michigan. 854 F.3d at 900. The defendant was the former CEO of plaintiffs' foreign parent company. *Id.* The panel relied on three main

factors in reaching its conclusion. *See id.* at 901-02 (finding that Defendant CEO "[ 1.] had established a close working relationship with MAG entities and employees in Michigan. . . [2.] was directly involved in planning for future operations in the state and met with executives from MAG Automotive's largest client, the Ford Motor Company [twice in Michigan]. . . [3.] was in regular contact with Michigan-based executives by phone and email").

The factual allegations in the present complaint do not fall neatly into either of these lines of precedent.[2] But even if the court employs the "stream of commerce plus" analysis preferred by Defendant Fiat, it is clear that Fiat did more than simply put a product "into stream of commerce in the United States with a reasonable expectation that it could end up in the forum state." *BOS GmbH & Co. KG v. Macauto USA, Inc.*, No. 17-10461, 2017 WL 6539045, at *3 (E.D. Mich. Dec. 21, 2017) (citing *Asahi*, 480 U.S. at 112). Fiat's own affidavits indicate that the vehicle at issue was one of fifteen "normal production" test vehicles "built at the time" and sent to Michigan for the targeted purpose of testing. (ECF No. 25-2, PageID.223-24; ECF No. 25-3, PageID.228.) It is, therefore, clear that the shipment of this vehicle to Michigan for testing was not, for example, a fortuitous, one-off occurrence. This situation is readily distinguishable from *World-Wide Volkswagen Corp*, where the defendants merely sold a car to an individual who later brought it into the forum state. *See* 444 U.S. 286, 295.

---

[2] While Sompo now contends in its briefing that Fiat and Chrysler's operations are more intertwined than their affidavits would suggest, Sompo's complaint fails to specifically plead such a broad intertwining of operations has occurred with respect to Chrysler's Michigan operations. (See generally ECF No. 1.) Therefore, given the lack of specific allegations, it is impossible to conclude that the factors that caused jurisdiction to be found in *MAG IAS Holdings v. Schmuckle*, 854 F.3d 894, 900 (6th Cir. 2017), are present here.

While Fiat contends that personal jurisdiction is inappropriate because its conduct does not fall squarely within the traditional "plus factors," required under a stream of commerce analysis, (see ECF No. 25-3, PageID.228), viewing the facts in a light most favorable to the non-moving party, the court cannot ignore the business realities that underpinned the vehicle's shipment to Chrysler in Michigan. The Jeep Renegade model at issue is currently produced in three FCA final-assembly plants around the world and is sold in numerous countries (by both Chrysler and Fiat).[3]  By shipping test vehicles directly to Chrysler's principal place of business in Auburn Hills, Michigan, Fiat "purposefully directed" the vehicles to Michigan. *See Asahi Metal Indus. Co.*, 480 U.S. at 112. There is no reason to think that Fiat transferred the test vehicles to Chrysler for any reason other than to further the car's development, benefiting all FCA divisions building and selling the model, including Fiat. Viewing the facts in the light most favorable to Sompo, the court concludes that it is not rational to conclude that Fiat would have simply transferred the Jeeps to Chrysler without expecting to benefit from

---

[3] *See Melfi Plant prepares for production of new Jeep Renegade Plug-in Hybrid*, FCA Group, (Oct. 8, 2018) https://www.media.stellantis.com/em-en/jeep/press/melfi-plant-prepares-for-production-of-new-jeep-renegade-plug-in-hybrid (noting that 742,000 Renegades have been produced to date in Italy for sale in the North America and Europe); *Jeep Renegade is the best-selling SUV in the country and the most loved by consumers of this [sic] text*, FCA Group, (April 3, 2020) https://www.fcagroup.com/stories/latam/en-us/Pages/jeep-renegade-5-anos.aspx (noting that the "Jeep Automotive Plant in Goiana, PE" had over 320,000 Jeep Renegades for the Latin American region in the "last five years"); *GAC FCA Celebrates Production Launch at New Jeep Plant in Guangzhou, China*, FCA Group (April 18, 2016) *https://www.fcagroup.com/en-US/sustainability/fca_news/Pages/GAC_FCA_Celebrates_Production_Launch_at_New _Jeep_Plant_in_Guangzhou_China.aspx* (noting that local production of the Jeep Renegade began in China during 2016).

future testing.[4] (Notably, the affidavits produced by Fiat are silent on whether regular collaboration between Chrysler, Fiat, and Aisin engineers occurred as part of the testing program.) The court finds that the benefits likely to accrue to Fiat from such a testing program constitutes a "plus factor" that weighs in favor of jurisdiction. Such regular testing of its vehicles by Chrysler in Michigan creates a situation in which Fiat could "reasonably anticipate being haled into court" in Michigan with regard to the product. *See World-Wide Volkswagen Corp.*, 444 U.S. at 297.

If Fiat, hypothetically, had shipped the fifteen Jeeps directly to Michigan and sold them to an unaffiliated customer here instead of just testing them, precedent indicates that Fiat would likely be subject to specific personal jurisdiction in the state with regard to the product. *See Asahi Metal Indus. Co.*, 480 U.S. at 112 (listing as "plus factors" "marketing [of] the product through a distributor who has agreed to serve as the sales agent in the forum State" or "establishing channels for providing regular advice to customers in the forum State." "Plus factors" such as these could justify specific personal jurisdiction); *see also Polar Electro Oy v. Sunto Oy,* 829 F.3d 1343, 1350 (Fed. Cir. 2010) (shipping almost one hundred products to the forum state "satisf[ied] the more stringent tests articulated by Justice O'Connor in *Asahi*"). The court sees no reason that the unique factual posture of the case involving the sale/transfer of a "test

---

[4] Drawing all inferences in favor of Sompo, the court concludes that that statements regarding the vehicle's production in Fiat's affidavit—where it alleges both that the Jeep started out as a "normal production vehicle" and that Fiat only "partially assembled" it— can be harmonized by assuming that the Jeep started out as a normal gas-powered model produced in Italy that was then heavily modified by Chrysler to add a plug-in hybrid powertrain. (*See* ECF No. 25-2, PageID.223.) So, for the purposes of this motion, the court views the Jeep to be essentially a finished product when it was shipped from Italy to Michigan.

vehicle," to a sister-company, as opposed to a sale to customer, should accrue to Fiat's benefit.

In the alternative, Fiat argues that "Plaintiff's claims do not arise from [its] conduct in Michigan" by pointing out that the test Jeep at issue was only partially assembled by Fiat, (ECF No. 25, PageID.216), but at this stage, such a distinction is unavailing. Indeed, as this court has previously found, the presence of a foreign manufacture's goods, even unfinished goods, can be sufficient to establish personal jurisdiction when those goods are the cause of an injury. *See McFadden v. Fuyao N. Am. Inc.,* No. 10-CV-14457, 2012 WL 1230046, at *5 (E.D. Mich. Apr. 12, 2012) (Steeh, J.) (finding that personal jurisdiction existed over a Chinese manufacturer of automotive glass when a plaintiff was injured by glass shifting in its box prior to final installation because the defendant regularly shipped such glass to Michigan and entered into major contracts with General Motors in Michigan). Sompo's complaint specifically alleges that the fire at issue occurred when an HVAC hose contacted the vehicle's exhaust system and melted. (ECF No. 1, PageID.5.) One need not be an expert mechanic to know that every "normal production" passenger vehicle on the road today with an internal combustion engine has both an exhaust system and an HVAC system. While the affidavits supplied by Fiat indicates that Chrysler installed a battery pack and an electric drive system after it received the Jeep, those systems are not the alleged source of the fire. (*See* ECF No. 25-2.) While it may turn out that Chrysler's modification to the vehicle required the removal and/or modification of these existing traditional systems, that is a question of fact that falls outside the scope of the present motion. Because Plaintiff has

plausibly alleged that the fire was caused by systems in the car installed by Fiat, this argument is not sufficient to defeat personal jurisdiction.

With respect to the third prong of the Sixth Circuit's specific personal jurisdiction test, it has been well established that "[i]f prongs one and two of Southern Machine test are satisfied, then there is an inference that the reasonableness prong is satisfied as well." *Intera Corp.,* 428 F.3d at 618 (citing *CompuServe*, 89 F.3d at 1268), "In determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors: (1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *IDFA, LLC v. Wilson*, No. 07-CV-11622-DT, 2009 WL 4646283, at *14 (E.D. Mich. Dec. 8, 2009) (citing *Intera Corp.*, 428 F.3d at 618).

Fiat purports to also contest this prong, but its briefing on the unreasonableness element consists of two sentences reciting the standard. (*See* ECF No. 25, PageID.217.) While the court acknowledges that its finding of jurisdiction certainly imposes a burden on an Italian company like Fiat—albeit one that is a subsidiary of a multinational company with significant operations in Michigan—given the inference in favor of reasonableness inherent in the standard, Fiat's lack of specific argumentation contesting this prong is fatal. Therefore, the court concludes that Sompo has successfully pleaded a prima facie case of personal jurisdiction.[5]

---

[5] Given this finding, the court declines to consider Plaintiff Sompo's alternative argument that Fiat "may be subject to general personal jurisdiction."

20

## V. CONCLUSION

For the reasons explained above, as a matter of law, the claims raised in Chrysler's third-party complaint must be brought as affirmative defenses in the initial subrogation action. Therefore, the third-party complaint is dismissed. The court also finds that Defendant Fiat's motion to dismiss for a lack of personal jurisdiction should be denied. Accordingly,

IT IS ORDERED that Plaintiff and Third-Party Defendants' joint "Motion to Dismiss Third-Party Complaint" (ECF No. 17) is GRANTED.

IT IS FURTHER ORDERED that Defendant Fiat's "Motion to Dismiss for Lack of Jurisdiction" (ECF No. 27) is DENIED.

                                              s/Robert H. Cleland                           /
                                              ROBERT H. CLELAND
                                              UNITED STATES DISTRICT JUDGE

Dated:  March 9, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, March 9, 2021, by electronic and/or ordinary mail.

                                              s/Lisa Wagner                                 /
                                              Case Manager and Deputy Clerk
                                              (810) 292-6522

S:\Cleland\Cleland\AAB\Opinions and Orders\Civil\20-10734.Sompo.MTD.AAB.RHC.docx